IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KATHLEEN CARR, KEEGAN KILLORY, and KELSIE POWELL, individually, and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>v.<br><br>OKLAHOMA STUDENT LOAN AUTHORITY and NELNET SERVICING, LLC,<br><br>                    Defendants. | Case No. 5:23-CV-00099-R<br><br>**HON. DAVID L. RUSSELL**<br>**CLASS ACTION** |

**BRIEF IN SUPPORT OF DEFENDANT NELNET SERVICING, LLC'S MOTION TO TRANSFER VENUE AND/OR FOR STAY**

**I.    INTRODUCTION**

Defendant, Nelnet Servicing, LLC ("Nelnet") moves to transfer this matter to the United States District Court for the District of Nebraska; or, in the alternative, stay this matter. This is the only case out of a total of twenty-four (24) class actions filed against Nelnet as a result of a July 2022 data security incident that is not currently pending in the District of Nebraska (the "Related Cases"). The first Related Case was filed against Nelnet in the District of Nebraska. Since then, every case, other than this one, was either filed in Nebraska or was transferred there by consent of the parties. Further, the cases pending in Nebraska have all been consolidated under one action—*In re: Data Security Cases Against Nelnet Servicing, LLC*, Case No. 4:22-cv-3191 (the "Consolidated Action")—and leadership has been appointed. *See In re: Data Security Cases Against Nelnet Servicing,*

1

*LLC*, Case No. 4:22-cv-3191, ECF No. 29 (the "Consolidation Order").[1] A Consolidated Amended Complaint (the "Consolidated Complaint") has now been filed in the Consolidated Action. *Id*., ECF No. 51.

In the present case, Plaintiffs plead almost identical claims and allegations against Nelnet as those brought in the Consolidated Action and seek to represent the same Nationwide Class. While the Plaintiffs in this case also include the Oklahoma Student Loan Authority ("OSLA") as a Defendant where the Consolidated Action does not, the Consolidated Complaint is replete with references to OSLA, and OSLA expects to be drawn into that action. *See* Fertel Declaration, Exhibit 1 at ¶¶ 5-6. Accordingly, in the interests of judicial economy and considering the burden on the Parties, a transfer of this

---

[1] The cases consolidated under this docket number include: *Jesse Herrick v. Nelnet Servicing, Inc.,* Case No. 4:22-cv-03181, *Amanda Beasley v. Nelnet Servicing, LLC,* Case No. 4:22-cv-03187, *Antonia Bird v. Nelnet Servicing, Inc.,* Case No. 4:22-cv-03195*, Robert Carlson v. Nelnet Servicing LLC,* Case No. 4:22-cv-03184, *Carey Ballard v. Nelnet Servicing, LLC,* Case No. 4:22-cv-03185*, Michael Varlotta v. Nelnet Servicing, LLC,* Case No. 4:22-cv-03188*, Dylan Hollenkamp v. Nelnet Servicing, LLC,* Case no. 4:22-cv-03189*, William Spearman et al. v. Nelnet Servicing, LLC,* Case No. 4:22-cv-03191*, Barbara Miller v. Nelnet Servicing, LLC,* Case No. 4:22-cv-03193, *Francine Simmons v. Nelnet Servicing, LLC,* Case No. 4:22-cv-03194*, Veronica Joaquin-Torres v. Nelnet Servicing, LLC,* Case No. 4:22-cv-03196*, Kennedy Freeman v. Nelnet Servicing, LLC,* Case No. 4:22-cv-03197*, Pamela Bump et al. v. Nelnet Servicing, LLC,* Case No. 4:22-cv-03204*, Mia Sayers et al. v. Nelnet Servicing, LLC,* Case No. 4:22-cv-03203*, Christopher Cordaro v. Nelnet Servicing, LLC,* Case No. 4:22-cv-03207*, Ryan Gamen v. Nelnet Servicing, LLC,* Case No. 4:22-cv-03209*, Hunter Freeland v. Nelnet Servicing, LLC,* Case No. 4:22-cv-03211*, Max Eichenblatt v. Nelnet Servicing, LLC*, Case No. 4:22-cv-03227, *Neil Kitzler v. Nelnet Servicing, LLC*, Case No. 4:22-cv-03241, *Jennifer Hegarty v. Nelnet Servicing, LLC*, Case No. 4:22-cv-03186--JMG-CRZ; *Quinn v. Edfinancial Services, LLC and Nelnet Servicing, LLC*, Case No: 8:22-cv-413-JMG-CRZ; *Ian Scott, et al v. Nelnet Servicing, LLC,* Case No: 4:22-cv-03259-JMG-CRZ; and Garner J. Kohrell v. Nelnet Servicing, LLC and EdFinancial Services, LLC, Case No. 4:22-cv-03267.

matter to the District of Nebraska is warranted and this Court should grant Nelnet's Motion to Transfer or, in the alternative, stay the pending action.

## II.  RELEVANT FACTUAL ALLEGATIONS

Nelnet, which has a principal place of business in Nebraska, is a student loan servicing company. *See* First Amended Complaint (the "Complaint" or "Compl.") at ¶ 17. According to the Complaint, Plaintiff Kathleen Carr is a resident and citizen of New Jersey (*Id*. ¶ 17), Plaintiff Keegan Killory is a resident of Massachusetts (*Id*. ¶ 18), and Kelsie Powell is a resident an Indiana (*Id*. ¶ 19). Plaintiffs alleges that they received notice from the Oklahoma Student Loan Authority ("OSLA") via U.S. Mail dated August 26, 2022, that their information was involved in the July 2022 data security incident (the "Incident"). *Id*. ¶ 28. Plaintiff Carr filed this action on January 3, 2023, in Oklahoma state court and it was removed to the District of Western Oklahoma on January 30, 2023, the same day the District of Nebraska issued the Consolidation Order. *See* ECF. 1. After Nelnet and OSLA filed Motions to Dismiss, Plaintiffs filed their First Amended Complaint, which included two (2) additional Plaintiffs, Keegan Killory, and Kelsie Powell.

Plaintiffs' counsel in this matter is also counsel of record in one of the Related Cases that is a part of the Consolidated Action, *Hegarty v. Nelnet Servicing, LLC*, 4:22-cv-03186, which was filed on September 2, 2022. The *Hegarty* action was filed several days after Plaintiff Jesse Herrick filed the first case against Nelnet on August 30, 2022, *Herrick v. Nelnet Servicing, LLC*, 4:22-cv-3181, which is also a part of the Consolidated Action. Plaintiffs' counsel was also associated with one of the contingents of Plaintiffs' counsel that was not awarded leadership pursuant to the Consolidation Order. *See* the Consolidation

Order, ECF 29, at 4-5, 14. The Consolidation Order was issued after a Motion for Transfer and Consolidation was brought before the Judicial Panel on Multi-District Litigation, which was ultimately denied. Indeed, Plaintiffs' counsel here argued before the Judicial Panel against the need for the issuance of a Multi-District Litigation to handle the Related Cases (the "JPML Hearing"). *See* MDL No. 3053, December 1, 2022, Hearing Transcript, Exhibit 2 at 9 ("Mr. Federman: . . . There's no need for an MDL here. All the cases can go to Nebraska.")

### III.  ARGUMENT

#### A.  Under the First-to-File Rule, this Matter should be Transferred to the District of Nebraska.

Courts in the Tenth Circuit follow the first-to-file rule, which provides that "when two courts have concurrent jurisdiction, the first court in which jurisdiction attaches has priority to consider the case." *Cherokee Nation v. Nash*, 724 F. Supp. 2d. 1159, 1164-65 (N.D. Okla. 2010) (*quoting Hospah Coal Co. v. Chaco Energy Co.*, 673 F.2d 1161, 1163 (10th Cir. 1982)); *see also O'Hare Int'l Bank v. Lambert,* 459 F.2d 328, 331 (10th Cir. 1972) (stating that "it is well established in [the Tenth Circuit] that where the jurisdiction of a federal district court has first attached, that right cannot be arrested or taken away by proceedings in another federal district court"). The rule permits a district court to decline jurisdiction "where a complaint raising the same issues against the same parties has previously been filed in another district court." *Buzas Baseball, Inc. v. Bd. of Regents of Univ. Sys. of Georgia*, 189 F.3d 477 at *3 (10th Cir. 1999) (unpublished). There are several reasons that a federal court may decline jurisdiction, including "to avoid the waste of

duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *Id* at *2. Under the rule, the second-filed court, when presented with a motion to transfer, must make the initial determination as to whether the first-to-file rule applies. *Cherokee Nation*, 724 F. Supp. 2d at 1167. The court must consider the following factors when evaluating the first-to-file rule: "(1) the chronology of actions; (2) the similarity of parties[;] and (3) the similarity of issues." *Id*. (citing *Shannon's Rainbow, LLC v. Supernova Media, Inc.*, 683 F. Supp. 2d. 1261, 1278 (D. Utah 2010); *Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, 679 F. Supp. 2d 1287, 1296 (D. Kan. 2010)).

      i. **The Chronology of the Actions Supports Transfer to the District of Nebraska.**

"For purposes of the first-to-file chronology, the date that an original complaint is filed controls." *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., Inc.*, 16 F. App'x 433, 437 (6th Cir. 2001) (citing *Plating Res., Inc. v. UTI Corp.*, 47 F. Supp. 2d 899, 904 (N.D. Ohio 1999)). In this instance, it is undisputed that the present action was filed more than four months after the first filed case included in the Consolidated Action and well after the Parties to the Consolidated Action (including Plaintiffs' counsel representing the *Hegarty* Plaintiff) had been involved in procedural motion-practice regarding the consolidation of cases and the appropriateness of an MDL. As a result, the chronology of lawsuits factor supports application of the first-filed rule.

### ii. The Similarity of the Parties Also Supports Transfer

In looking at the requirement for similarity of the parties, the parties do not need to be perfectly identical; only a "similarity or substantial overlap is required." *Cherokee Nation*, 724 F. Supp. 2d at 1168 (quoting *Shannon's Rainbow*, 683 F. Supp. 2d at 1278-79). In addressing this factor in the context of class action suits, the Sixth Circuit, for example, has applied the first-to-file rule in cases where plaintiffs were class members in the first-filed case. *Riley v. Gen. Motors, LLC*, No. 2:23-CV-00924, 2022 WL 787871, at *4 (S.D. Ohio Mar. 15, 2022) ("substantial overlap has seemingly been found only where the group of plaintiffs in the second filed case are wholly subsumed by the first groups of plaintiffs") (citing *Heyman v. Lincoln Nat'l Life Ins. Co.*, 781 F. App'x 463, 476 (6th Cir. 2019)). "This suggests, *inter alia*, that if plaintiffs are already represented in the first suit, the second suit would be duplicative, expose defendants to conflicting judgements, and undermine the comity between federal courts." *Id.*

*First*, the allegations of Plaintiffs as to their personal experiences and alleged harm are substantially similar to the allegations brought by the, at present, twenty-six named Plaintiffs in the Consolidated Action. *Compare* Consolidated Complaint at ¶¶ 114, 117, 119, 127, 130, 133, 141, 144, 150 (e.g., "researching the Data Breaching, reviewing, and monitoring accounts," "exposure to increased and imminent risk of fraud and identity theft," "loss in value of [personally identifiable information]," and "substantial risk of future identity theft and its attendant damages for years to come") *with* Compl. at ¶ 117 ("Plaintiff Carr suffered actual damages such as . . . lost time related to monitoring her accounts for fraudulent activity . . . exposure to increased and imminent risk of fraud and

6

identity theft . . . loss in value of her PII due to her PII being in the hands of cybercriminals who can use it at their leisure"); ¶ 130 (same as to Plaintiff Killory); ¶ 144 (same as to Plaintiff Powell) Accordingly, while Plaintiffs here may not be named plaintiffs in the Consolidated Action, their interests as a member of the prospective class are well represented and any specific injuries can be addressed at later stages of that Consolidated Action, to the extent appropriate. *Second*, it is undisputed that Nelnet is a shared joint Defendant among this case and the Consolidated Action. *Finally,* while OSLA is not yet a named Defendant, OSLA itself anticipates that it will be and consents to transfer. *See* Fertel Decl., Exhibit 1, at ¶¶ 6-7. Indeed, even Plaintiffs' counsel himself noted at the hearing on the JPML that the Consolidated Actions were likely to involve OSLA. *See* JPML Hearing Transcript, Exhibit 2, at 9 ("Oklahoma will get implicated in the case through the Oklahoma Student Loan Authority, the venue issues bring the case in Nebraska"). Thus, this factor weighs in favor of the first-to-file rule.

### iii. The Issues in this Case are Almost Identical to the Issues in the Consolidated Action.

This case involves legal issues that are essentially the same as those asserted in the Consolidated Complaint. Both cases involve allegations and claims for harm allegedly sustained as a result of the exact same data security incident involving Nelnet. This case asserts six (6) causes of action against Nelnet and OSLA: negligence, negligence per se, breach of third-party beneficiary contract, and declaratory injunctive relief, and invasion of privacy. All of these causes of action, with the exception of the express alleged breach of third-party beneficiary contract, have been pled in the Consolidated Complaint—

although the Consolidated Complaint does include a cause of action for breach of implied contract in general.

The absence of this specific cause of action is of no concern, however, given that this cause of action is not one even recognized by Oklahoma Courts. *See e.g. Wathor v. Mut. Assurance Adm'rs, Inc.,* 87 P.3d 559, 561 (Okla. 2004) ("Every contract in Oklahoma contains an implied duty of good faith and fair dealing" and a breach of that duty results in damages, "not independent tort liability"). Accordingly, all of the legal bases that the *Carr* Complaint relies upon will be addressed in substantial part or has significant overlap with at least one of the thirty-three (33) causes of action brought in the Consolidated Action.

### iv. No Exceptions to the First-to-File Rule Are Present.

While the Tenth Cricut has not provided a comprehensive explanation of exceptions to the rule, *see Cherokee Nation*, 724 F. Supp. 2d at 1165, other circuits have recognized exceptions that a second-filing party can rely on to oppose transfer based on these grounds. For example, the Second Circuit recognizes two exceptions: "(1) where the balance of convenience favors the second-filed action, and (2) where *special circumstances* warrant giving priority to the second suit, such as where a first-filing party engages in forum shopping or anticipatory filing." *Id*. at 1166 (citing *Emps. Ins. of Wausau v. Fox Ent. Grp., Inc.*, 522 F.3d 271, 275 (2d Cir. 2008) (emphasis in original). Many courts have recognized that "special circumstances" include bad faith or forum shopping. *See*, *e.g., Alltrade, Inc. v. Uniweld Prod., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991) (noting that the "circumstances under which an exception to the first-to-file rule typically will be made include bad faith . . . anticipatory suit, and forum shopping) (internal citations removed); *Valley Enterprises of*

*Ohio LLC v. Gainey Transp. Servs.*, No. 1:08 CV 1605, 2008 WL 4279601, at *2 (N.D. Ohio Sept. 16, 2008) (stating that " there are no "special circumstances," such as bad faith or forum shopping, barring the transfer"); 473 F. Supp. 2d 790, 796 (E.D. Mich. 2007) (nothing that extraordinary circumstances include "inequitable conduct, bad faith, anticipatory suits, and forum shopping") (citing *Zide*, 16 Fed. App'x. at 437 (6th Cir. 2001).

No "special circumstances" like bad faith or forum shopping are present here that would bar a transfer to the District of Nebraska. Indeed, transfer here is prudent to prevent unnecessary duplicative efforts in this Court and in Nebraska, to avoid the possibility of opposing rulings between the Courts, and to avoid piecemeal resolution of issues that call for a uniform result.

    **B.**    **Transfer is also Appropriate under 28 U.S.C.A. § 1404(a).**

Motions to transfer venue are governed by 28 U.S.C. § 1404(a), which provides in pertinent part, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to another district or division where it might have been brought[.]" A transfer under Section 1404(a) is in the discretion of the trial court. *Jacobs v. Lancaster*, 526 F. Supp. 767, 769 (W.D. Okla. 1981) (citations omitted). "The party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient." *Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010) (internal quotation marks omitted).

In considering a motion to transfer, a district court must weigh the following factors:

[1] the Plaintiffs' choice of forum; [2] the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; [3] the cost of making the necessary proof; [4]

9

questions as to the enforceability of a judgment if one is obtained; [5] relative advantages and obstacles to a fair trial; [6] difficulties that may arise from congested dockets; [7] the possibility of the existence of questions arising in the area of conflict of laws; [8] the advantage of having a local court determine questions of local law; and[ ] [9] all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Id.* (quoting *Chrysler Credit Corp. v. Country Chrysler, Inc.,* 928 F.2d 1509, 1516 (10th Cir.1991)).

The overwhelming majority of these factors favors transfer to the District of Nebraska.[2] With respect to factor (1), although Plaintiffs' choice of forum must be given deference, it is given much less consideration if the Plaintiffs do not reside in the district. *See Four Corners Nephrology Assocs., P.C. v. Mercy Med. Ctr. of Durango,* 464 F. Supp. 2d 1095, 1098 (D. Colo. 2006). Here, not one Plaintiff named in this suit is an Oklahoma resident; they reside in New Jersey (Carr); Massachusetts (Killory); and Indiana (Powell). Comp. ¶¶ 17, 18, 19.

With respect to factors (2) and (3), the vast majority of fact witnesses reside in Nebraska.[3] In addition, because Nelnet is headquartered in Nebraska, most, if not all, of the relevant document and records and sources of proof would be located there as well. Further, it is worth considering that the overwhelming majority of Plaintiffs, many residing outside of Nebraska, chose to bring suit in Nebraska where almost all of the witnesses and factual evidence is located, or consented to a voluntarily transfer to that jurisdiction. Thus,

---

[2] Factors (4), (5), (6), (7), and (8) are either neutral, irrelevant, or require consideration of legal issues that are premature at this early stage of the case.

[3] While Nelnet recognizes that some witnesses from OSLA may reside in this jurisdiction, OSLA agrees that more of the relevant witnesses and documents are likely to reside in Nebraska. *See* Fertel Decl., Exhibit 1, at ¶ 8.

the costs of litigating this case in Oklahoma would be significantly greater than litigating in Nebraska, as the clear nexus of relevant sources of proof and potential witnesses is located outside of this jurisdiction.

Most importantly, factor (9) weighs heavily in Nelnet's favor. With the Consolidation Order in place and leadership appointed in the Consolidated Action encompassing twenty-three related cases, the clear nexus of cases exists in that jurisdiction. Thus, any prejudice to Plaintiffs' choice of forum is vastly outweighed by interests of justice, particularly with respect to judicial economy. The District of Nebraska will be protecting the interests of all individuals allegedly injured as a result of the incident because all of the cases pending there involve national classes.

In accordance with 28 U.S.C.A. § 1404(a), for the convenience of the parties and in the interests of justice, venue of this matter should be transferred to the District of Nebraska.

### C.     Absent Transfer to Nebraska, a Stay of this Case is Appropriate.

Nelnet asserts that transfer to Nebraska is the more appropriate remedy. If the court declines to transfer the matter to Nebraska, however, Nelnet respectfully requests that this matter be stayed. Courts in this Circuit have the option to stay the "second-filed" action pending the outcome of the "first-filed" action instead of transferring the case to the first-filed court. *See*, *e.g., Cessna Aircraft Co. v. Brown*, 348 F.2d 689, 692 (10th Cir. 1965) (granting stay of second-filed cases pending termination of other cases pending outside district); *Ed Tobergte Assocs., Inc. v. Zide Sport Shop of Ohio, Inc.*, 83 F. Supp. 2d 1197,

1199 (D. Kan. 1999) (ordering proceedings stayed pending final termination of cases located in Southern District of Ohio).

Should this Court decide to stay rather than transfer this matter, Plaintiffs' interests remain protected. If Nelnet were to settle the Consolidated Action, Plaintiffs would be part of the settlement class and entitled to recovery under that settlement, or to opt out of that settlement and have their case proceed on an individual basis. An award in favor of the class, should the matter be tried to verdict, would attain the same result—relief for all members of the nationwide class, including the named Plaintiffs in this case. Thus, Plaintiffs will not be prejudiced by a stay. Rather, a stay would conserve judicial resources, promote efficiency, and prevent any inconsistent decisions.

WHEREFORE, Defendant Nelnet Servicing, LLC requests that the Court transfer this matter to the District of Nebraska, or in the alternative, stay the matter pending the resolution of the Consolidated Action. A proposed order is attached.

Dated: April 28, 2023

Respectfully submitted,

*/s/ Kyle N. Sweet*
Kyle N. Sweet, OBA # 17711
Brian D. Blackstock, OBA # 31943
**SWEET LAW FIRM**
24 West Park Place
Oklahoma City, OK 73103
kyle@sdh.law
brian@sdh.law

Claudia D. McCarron*
Justin M. Holmes*
**MULLEN COUGHLIN LLC**
426 W. Lancaster Avenue, Suite 200
Devon, PA 19333
cmccarron@mullen.law
jholmes@mullen.law
*Admitted Pro Hac Vice*

*Counsel for Defendant, Nelnet Servicing, LLC*

### CERTIFICATE OF SERVICE

    I hereby certify that on April 28, 2023, a copy of this motion was filed electronically with the United States District Court for the District of Western Oklahoma and served on all counsel of record through the CM/ECF system.

                                              */s/ Kyle N. Sweet*
                                              Kyle N. Sweet